Good morning, John Hamilton Scott, Deputy Public Defender, County of Los Angeles, Sport Petitioner and Appellant. Excuse me, excuse me, I'm very sorry, but we're not, I can just barely hear you on this end. Yeah, we better check the, yeah. Maybe an advantage. See what happens if you fiddle around a little with the mic before we do anything more complicated. Just talk into the mic more and see if that helps. If not, can you hear me? Can you raise the volume? Judge Christian, can you hear me? I can. No. Something just clicked somewhere. Somebody flipped a switch, and I'm good now. Can you hear me? Okay, now we're okay. All right. The district court in this case dismissed the petition on younger abstention grounds. Louder. Pardon me? Louder. Louder? Yell at me. Okay. And I'm going to ask the same. I'm hard of hearing, so I understand completely. The district court dismissed this petition on younger abstention grounds, finding the defendant's claim, or the petitioner's claim, is not covered. All right. Can I ask a question? At this point, the trial happened. The trial's over. So why are we looking at this now either as — I just wonder if that doesn't create a whole host of problems. One is, does the habeas, pretrial habeas go forward at all now, given that it's not pretrial anymore? Number two, do we apply younger now, even though the trial is over and there's nothing even to be interfering with? And thirdly, does it affect the AEDPA standard? Because this theoretically was brought, I suppose, as a 2241, but now the trial's over. So it all seems completely bizarre. Well, we did ask for a stay in order to avoid the preciseness problem. I know, but I understand. You didn't get what's now on. That's true. But I believe that the case law, and although this issue was not brought up before, is that once the jurisdiction of the court has been properly invoked, changes in status after that do not deprive the court of jurisdiction. I know this is — Well, younger is not a jurisdictional issue anyway. So that's not the question. So, for example, when a — if a prisoner seeks habeas corpus relief and is thereafter  But it's not a jurisdictional — younger is not a jurisdictional issue anyway. But I'm trying to find out why — suppose we said, okay, it's colorable. Then what's going to happen? Well, then it would go down to the district court for a ruling on the merits, which we have not yet acquired. And if the ruling on the merits was correct, then it would be valid. Then what? Then you'd vacate the conviction? Yes. Because the State court would have been without jurisdiction to render it there because all of the proceedings would have been in violation of the Double Jeopardy. Well, not without jurisdiction again. I mean, Double Jeopardy is not jurisdictional. Well, the court is without power to try to fit it in violation of the Double Jeopardy clause. It all seems very odd to me. I don't know. I may ask for briefing on this, but go ahead. Of course, this is an issue that has not come up. And therefore, I'm not completely prepared. If the court would like briefing on it, I'd certainly be prepared to. Because in the end, we at that point would be releasing somebody who was at that point in custody pursuant to a State court conviction, even though he wasn't originally. So. And this litigation does not concern that. This litigation predates that change in the statute. The only remedy we could give would be to release somebody who was in custody pursuant to a State court conviction. I'm sorry, I didn't hear you. The only remedy we could give would be to release somebody who was in or the only remedy the district court could give. That would be the practical result, although that wouldn't actually be the legal remedy. The legal remedy would be to interpose the Federal court between the State court and a State court judgment. And in essence saying the State court. But we'd have to tell somebody to do something. And what we would have to do would be to tell the State to release this person because he shouldn't have been tried. Yes, but it would not be because there was an invalidity in the judgment, but that there was an invalidity in the proceedings leading to the judgment. All right. Well, go ahead with the merits. I'm a little mystified. Well, what about, what about, it seems to me what we really have here is a colorable claim. What we have here is? Colorable claim. I believe that this claim certainly is colorable. There's no question but that the Petitioner was placed in jeopardy. There's no question but that the jury was thereafter discharged without a verdict. You know, there's also a question whether you had implied consent, manifest destiny. Well, it's certainly arguable. It's certainly arguable that there was no necessity for mistrial in this situation, and it's certainly arguable that there was no consent. And that's all that's really required for a claim to be colorable. We're not arguing about whether or not he should be in at this point. So suppose you're right and go to the district court. What's the district court going to do other than what we would do? He's looking at the same record. So what's the point of sending it back? Well, the ---- We really don't have a development of facts here to make a decision. We can look at the transcript of what occurred at that colloquy, and it leaves a lot of questions open. The ---- I can see a certain practical objection to sending it back under the circumstances, but it seems to me that that is the procedural good order of doing things. There is not really a ruling by the district court on the merits, and therefore there's not a ruling on the merits for this Court to review, and I'm not really sure it would be proper for this Court to go beyond the question which is presented by the district court's judgment. But younger abstention doesn't bar a colorable double jeopardy claim. I'm sorry? Younger abstention doesn't bar a colorable jeopardy claim. That's correct. All right. So if you want to do it briefly, talk about the merits a little bit in terms of ---- I gather that the district court ruling was not based on consent. Was not based on? Consent. Is that right? I can't tell exactly what the district court judgment was based on. The district court ---- there's only one sentence in the entire judgment which has anything to do with the issue where they say that trial was impossible. There's no explanation as to why they say trial was impossible. And in fact, at the point that the mistrial was declared, what was the status of the jurors? Well, there's ---- you can argue it in various ways, but there were at least 12 jurors. I think that if you count up who was left, who had not been excused, at the point that the mistrial was declared, there were 12 jurors and two alternates. There were at least 12 jurors. But there ---- but we certainly had not gotten down to 11. And no court has said that it was ---- that a mistrial was proper because there were fewer than 12 jurors. I wouldn't be here if there were fewer than 12 jurors. Fewer than 12 jurors is obviously necessity for a mistrial, absent the consent of everybody, to have a jury of less than 12. And there was no such consent. So I ---- you know, if the jury was less than 12, we wouldn't have any litigation. The trial court ruled that there had been a ---- that the counsel had consented, but the record fails to show that. The California appellate court ruled that counsel should have known that the judge thought that he consented, and the record doesn't show any reason why he should have known that either. The district court says trial was impossible, but we don't know why they think trial was impossible. So we don't really have a ruling from the district court on the merits of this that makes any sense. The district court just says it's not a colorable claim because trial was impossible. I believe it clearly was a colorable claim. Okay. Do you want to reserve time? Well, unless the Court has further questions, I'd like to reserve my remaining time for rebuttal. All right. Good morning, Your Honors. Deputy District Attorney Serena Murillo representing Appellia in this matter. How come the Deputy District Attorney who was there didn't see the problem coming? He kept his mouth shut or her mouth shut. I mean, she said to the Court numerous times. It was a boondoggle, wasn't it? For the DA? I don't think it was a boondoggle. I'm sure the DA sat there. All this was brewing. The judge was ready to declare a mistrial. And the DA didn't call any problem of double jeopardy to the judge's attention. I don't think the DA was on board with the Court declaring a mistrial. The DA adamantly insisted that she did not want to go forward with less than one alternate. I don't think that she was pushing the Court in any way to declare a mistrial. Well, first of all, I mean, absent consent, she really didn't have a choice about that, right? In other words, do you think that the judge on his own and without consent could have declared a mistrial because there was not at least one alternate? I do. Really? Why? Well, because, Your Honor, on the date that the mistrial was declared, and I'll address this point, and then if I could go back to the younger issue that you raised with the panel and I would like to do that. Right. On the date that the mistrial was declared, that was Monday, November 7th, they had already lost one juror. So as the jury sat, they had 11 sitting in the box and four alternates. Okay. They lost two alternates immediately, which left. Well, I thought one of them was not actually discharged. She was sort of sat out in the hall. Well, both of them were actually sat out in the hall. But one of them had never actually been discharged. One of them was discharged. The other one had not been discharged but was sitting in the hall and was going to be discharged because of that. Didn't have a very good excuse. Well, I think actually under California law, under Penal Code 1089, she did have a pretty good excuse. But let's assume that he didn't. He was out in the hall. The third juror. Excuse me for interrupting. Yes. Certainly, Your Honor. But in order to make this helpful to me, you're talking about one juror in every juror. So juror number three had been replaced, right? Had been excused. That's the juror who said he had a conflict and there was contempt here and so on for that juror. That's correct, Your Honor. That was on Friday the 4th, yes. Right. Juror number four was excused because his fiance broke her ankle, right? Correct. I didn't hear that. Juror number four was excused because her fiance broke her ankle. That's correct, Your Honor. So she, he's gone. Yes. Right? Juror number 32 is the one I think you were just talking about, but it helps me to be specific if I could. Certainly. If I could nitpick that way, please. So juror number 32 had announced she had problems with child care. Correct. And he initially did not excuse her, but after she was out in the hall, the defense counsel requested that she be excused and he said he was going, he ruled on it and said he was going to excuse her, right? That's correct, Your Honor. Okay. So she's gone. And then juror number six announces he's got pink eye. Correct. And that was just going to be a delay. It was going to be a delay, but for all intents and purposes, on Monday, November 7th, he was unavailable. He had a doctor's note. He didn't even have to show up. He was contagious. He had a note and showed up anyway. The prosecutor and the defense counsel had agreed that they were going to, they wanted to delay a couple of days. And the prosecutor had agreed to delay so defense counsel's expert could be taken out of order. That jury was resolved, right? Well, yes, but I disagree with the agreement to the delay, Your Honor. There was an agreement previously that the prosecutor would take the defense expert out of order. That didn't impact whether or not they were going to go to Wednesday or not. The question as to whether or not the jury trial would recommence on Wednesday had to do specifically with juror number seven's doctor's note. Juror number seven is the one that had the pink eye. He had a note from Kaiser saying on this day, the 7th, he is unavailable. He's contagious. However, it should resolve by Wednesday, which is why they were considering putting it to Wednesday. Well, they both agreed to consider until Wednesday, right? They both said we should wait for him. The defense never said he would wait until Wednesday. There's nothing in the record indicating that he ever contemplated going to Wednesday. He remained completely silent on the issue. That was part of the problem. I'm sorry. Why is that a problem? I mean, this district judge can say we're doing it on Wednesday. I mean, the trial judge. Yes, he could. The problem is because the Court was adamantly trying to elicit from the defense a response as to what would you rather do. Would you rather go forward with, at best, 12 jurors? Because if you excuse the three in the hall, you have the one gone from Friday. You're down to one alternate and 11 actual jurors. That's why the trial court brought in the remaining 11 jurors and told them the problem and said if anybody has a problem going forward, now is the time. And then some guy raised his hand and said I had a heart attack. And he doesn't ask him, what do you mean you had a heart attack? When did you have a heart attack? What's wrong with you? He didn't say anything. He just says, okay, that's the end of that. I agree, Your Honor. I agree. He could have asked that question. So that doesn't sound like manifest necessity. That doesn't. But let's remember that under Arizona v. Washington, manifest necessity happens after the defendant has objected to the mistrial. This defendant never objected to the mistrial. Well, he never had a chance. The guy raised his hand and the judge says, okay, we're done. No, to the contrary, Your Honor. The guy raised his hand, and then the court said, I believe they win. He brought both attorneys up to sidebar and said, I believe they win. They both had an opportunity to say something. They had an opportunity to say no, to object, to do anything. This isn't a situation where the court acted rashly and declared a mistrial. You know, what bothered me when I first asked you this question, maybe the situations have changed. But these deputies, they're with that judge for about a year, aren't they? They're in that courtroom day in and day out. Not on the ninth floor, Your Honor. That's a special floor where people get specially designated for long cause trials. So in that court, no, that was not the case. Normally, yes, but not in this case. This was a long cause case that specifically was sent to the ninth floor to Judge Bowers. So this is the first time that the deputy district attorney handled a trial before this particular judge? Well, I can't speak to that. I'm only saying that this is not his calendar DA who's constantly in that court every day. The Ninth Circuit doesn't have calendar DAs. I mean, sorry, the ninth floor doesn't have calendar DAs. What worries me is that, well, not worries me, but what I'm thinking about is that you could see that the judge was on his way to declare a mistrial. And when that happens and the jury has already been sworn and the alternates have been sworn, then you think about double jeopardy. But no one seemed to bring that issue up. And I would have thought the prosecutor might have brought it up and said, well, Your Honor, do we have a double jeopardy problem here? It would have been fantastic if she would have. That didn't happen. I can't expect the defendant to do that. Because it would be in defense counsel's interest, the interest of the client, if there was a valid double jeopardy claim. I agree, Your Honor, but neither can a defendant engage in gamesmanship and try to push the court in that direction by not answering questions, only to later claim a double jeopardy claim in order to get the windfall of never being prosecuted. I don't know that there was gamesmanship. I don't know there was gamesmanship. But is your ultimate position that this is a manifest necessity or an implied consent situation? I think it's an implied consent situation simply because the defendant never objected. I mean, manifest necessity, Arizona v. Washington, puts the burden on the people to justify by manifest necessity why the trial court declared a mistrial after the defendant has objected. That never happened. And so we're in this weird posture where the defendant never specifically and expressly asked for the mistrial, but neither did he object. And I think it was in an effort to see what was going to happen so he could capitalize on the situation later and say, double jeopardy, you can't try me now in this double murder case because the judge was desperately trying to get these jurors and settle in for this long trial and wasn't able to do so. And I don't think that's what the double jeopardy clause stands for. I don't think that's what it seeks to protect people from. In fact, in United States v. Richardson, I don't agree. The judge didn't have to excuse all these people. I mean, it just came in there now. If anybody raises your hand and you just have a problem, you know, you're free. Well, he didn't, but then what happens when they don't show up during the next three weeks leading into Thanksgiving? What do you do? You send the tariff out to bring them into court. That's what you do. I suppose that's one alternative, Your Honor. I suppose that's an alternative. I don't think it's one that's used very often, though. No, but there's something that happened in the course of this jury selection, what went on there, that kind of gave them the idea, some of the jurors the idea that all you have to do is come up with some excuse and you're going to get off, even though you've been sworn in. Well, I agree, Your Honor, that it's certainly a difficult environment. That's exactly what he told them. I mean, he said, I'm going to leave it totally up to you because it's very critical. I'm not even going to start this. If somebody tells me you can't do it, all you need to do is raise your hand and I'll tell them it's done at this point. And then some guy raises his hand and says he had a heart attack. And he doesn't say, you know, what do you mean you had a heart attack? Why did you have a heart attack? Because he had just told them essentially raise your hand and say whatever you want to say. So, I mean, clearly it can't be manifest necessity because he basically let the jurors excuse themselves. So the question is whether the defense lawyer at that point had the obligation to say, wait, Judge, you can't do that. I think he did. Not because it wasn't asking him for his consent. He was saying this is what I'm doing. So he had some obligation at that point to stand up and say, I'm not going to, you shouldn't do this? Yes. When he brought him up to sidebar, he had every opportunity. That was afterwards. That was after he had said all you need to do is raise your hand and I will tell them it's done at this point because I cannot risk doing it. And then he did exactly what he said he was going to do. Right. But prior to that, Your Honor, prior to making that statement to the jurors, if you look at the transcript, he told the lawyers what he was going to tell the jurors. And he also told the lawyers, if you, you know, if there's a problem, let me know. Let's talk about this. And three times he said to the defense attorney, I still haven't heard what you want to do on this. You haven't told me. And the defense attorney said absolutely nothing on purpose. Where is that in the transcript? It should be on the November 7th transcript. Your Honor, may I go to my desk? Where in the transcript is that colloquy where this trial was declared? Under People's Supplemental Exhibits, Your Honor. I'm sorry. Excerpts of the record. I should have it right at my fingertip. So should I. I'm looking at the record. And what he actually said is if we are, before that, he said, if we are down to no alternates, when I call them in a room before I go in to bother them, going to say such and such, and then, but they weren't down to no alternates. Well, they were, because the two in the hallway were going to get dismissed. Well, you're saying that, but one of them was, had, was excused, but the other one, he said, I don't think that's a good enough reason to go out in the hall, and that's where it stood at the moment. I don't think he said, I don't think that's a good enough reason. I think he said, go in the hall and let's see where this is going to take us. He said. No, there were 12, counsel, because if nothing else, there's one juror who's got pink eye, and he can, but he's not going to be contagious in two days. I agree, Your Honor. There were 12. And then the guy with the heart attack made his statement, which would have taken them down to 11 if you would have flushed that out a little bit more. No, I don't think there were 12. I think, what I mean is I think there's still 12 jurors before you get to an alternate. But setting that aside, I have a couple questions. Maybe I could squeeze them in now. Certainly. Your brief, the red brief, says that there was a 20-plus minute recess. I think you said 22 minutes. After the jury was excused but before the declaration of mistrial. That strikes me as a very long time to think about this. But your citation to the record doesn't support that. So where can I look to find that that was a 20-plus minute break? It's the red brief at 11. But it just cites to the transcript, and my copy of the transcript and the excerpt doesn't have a time. I'm going to have to look. If I can grab my papers. Let me check real quick. I actually think it was Apollon's Exhibit F. Where is that? Well, it's not at the transcript page that you cited. So I just need a little help with that. I'm looking at page 12. Oh, wait. Of what? Of Apollon's Exhibit F, which is the transcript from November 7th. Page 12 of the transcript. When you say exhibit, do you mean excerpt? I'm sorry, Your Honor. Yes. Apollon's Excerpt F. Thank you. At page of the transcript, page 12 and 13. But you're correct, Your Honor. It doesn't indicate the time frame, and I apologize. I don't recall where I got that time frame. Okay. Well, that's going to be ‑‑ I'm going to ask you a supplement, because that's going to be very important for me, to know whether that was really a 20‑minute recess, because I believe it was after the jury was excused but before the mistrial was declared. Certainly, Your Honor. My other question, counsel, is when they're excused to Floor 11, my first question was going to be where was the trial held, but I think you just told me it was Floor 9. Yes. Okay. So since I'm from Alaska, I don't know about the local custom, but in this particular courthouse, does the record tell me if they're going to Floor 11, does that mean they're going back to the jury assembly room? That's correct. Okay. That's what the jury assembly room is. Thank you. So this was a Monday morning. Is there something that would tell me ‑‑ you know, what I would expect in a trial court, if you're sending juries back to the jury assembly room, is that they're not being excused from their jury service, not discharged, but that they are subject to recall to be sending out to a different one‑year panel. Is that correct? That's correct. Well, no. Once you've been sworn on a panel, if the trial goes away, you're done under one day, one jury. So they'd go back to get their paper from the jury assembly room, indicating that they completed their service. Okay. So you think that that ‑‑ all right, so that's helpful to me. We have case law in the Ninth Circuit indicating that even after a jury has been discharged, if they haven't been subjected to any disqualifying information or circumstances, they could have been called back. We have case law that, you know, under the certain circumstances, that could have happened. Hence, I'm very interested in this 20‑minute delay. I'm happy to figure out whether or not that would have been possible if somebody had voiced an objection. So I'm trying to figure that out. And my next question is, there's a place where the judge makes it very clear. He says, we all agreed they would not go forward. And I believe, counsel, this is after he comes back, after the recess. That's correct, Your Honor. In the process of planning his trial, he says, we all agreed that we would not go forward without an alternate, which is not correct. I don't believe that is really nailed down in the transcript. But there's no objection. And I understand defense counsel's brief to say that he didn't hear that comment by the judge. I can't tell if that comment by the judge was made at a sidebar, or so people were whispering, or whether there's any indication there was any other problem with audio. My understanding is that it was made in open court, not a sidebar, based on the fact that there are no notations indicating that it was at sidebar. Can I go back to my hypothetical question at the beginning, which doesn't appear to be hypothetical, which is, it appears to me what happened here is the district judge said, if we have no alternates, I'm going to declare I'm not going to go forward. Is that manifest necessity, having no alternates? Would that be a ground for the judge without consent to declare a mistrial? To go less than 12 yards? If there are 12 jurors. If there are 12? No. No. And that's what he did. He said, if there are no alternates, I'm going to say we're done. But he himself, at the double jeopardy hearing afterward, said that he believed that the defendant had consented based on the statements and his failure to object. But he said at the beginning, he said, if we are down to no alternates, when I call them in the room, I'm going to say I don't know exactly where this will end. I cannot do that. Let me know right now to the jurors. If somebody raises his hands, we are done. And that's exactly what he did. Somebody raised his hands and he said, we are done. So I don't see where he was waiting for anybody to consent to anything. Well, I don't think that he was waiting to consent. He had already told the lawyers that's what he was going to do. That's what I was just reading you, where he told the lawyers. What he told the lawyers was, this is what I'm going to do. Right. He didn't say, is it okay with you if this is what I'm going to do? If I do this? He said, this is what I'm going to do. And then he went and did it. He went and did it. But the relationship between the parties prior to that, though, Your Honor, he had a lot of interaction with the defense attorney, more so than he had with the prosecutor. And based on that relationship, I think he expected a response. Well, the prosecutor kept saying, I don't want to go ahead without an alternate. The defense lawyer never said that. He never said anything. Well, no, he said some things. He said, I could put my expert on earlier. But that had already been agreed to prior to them even getting there. Here's another thing. The judge said, we simply do not have qualified jurors who can serve. And as a result, it was agreed that if we would have had only 12 jurors, we would start over. And in addition, I believe it was number two that made it fairly clearly, in all probability, we would not have even one alternate before this was over with. So the judge is saying something about, and as a result, it was agreed. So I think we have, certainly have that issue of implied consent. And that's something that the district court can address. I think, and I think the district court's point was not even whether there was consent or manifest necessity. And younger, the younger doctrine doesn't preclude that. The younger doctrine doesn't preclude that. However, because the defendant has now been tried and convicted, I agree that this is largely moot. This is no longer a 2241 petition. It should be a 2254 petition. Kagan. You haven't briefed that at all. Nobody's briefed it. And I don't, I just have no idea what the case law is on this. It only occurred to me last night that we're in this weird position. I mean, on several counts, is younger still applying? I think there is younger law, you know, general younger law that says that as long as the case is somewhere along, where, in this instance, where was the Federal habeas at the time the State conviction occurred? The Federal habeas was filed two days before the jury trial was set to begin in the State court. But where was it when the jury, when the conviction had finished? Pending oral argument. But had it been briefed? It had. Actually, no. You know, Your Honor, I don't recall specifically. Well, there is younger law about how far along the Federal case has to be to continue. So that's one issue. Well, the other issue is, does it make any difference with regard to whether it's a 2241 or a 2254 that there's now been a conviction? Now, you probably waived that issue because you never raised it. Well, I never raised it. But younger, I think, is still ongoing because the criminal proceedings are still ongoing. The defendant's appellate rights have not expired any further notice of appeal in November. All right. Well, that's an argument for not being moot and for us just applying the younger standard. Right. In which case, if you affirm the lower court's decision, I don't think there would be any prejudice. But that seems really difficult, to be frank, to say that it's not colorable. And we just sat here for however long we sat here and came up with a lot of reasons why it seems at least colorable. But none of them are the reasons that were given by the district court. The district court said it wasn't colorable because he said that original Jeopardy never terminated. Well, I don't even know what that means. What does that mean? What it means is under United States v. Richardson, it says that the double Jeopardy clause seeks to protect those who have already been acquitted or convicted. Well, he's wrong about that. Obviously, he's wrong about that. I don't think he is wrong about that. I mean, in United States. You mean to say that I thought the general understood rule was that once the jury has been impaneled, if the jury is then discharged without either a consent or manifest necessity, there's double Jeopardy, no? That's true, except that manifest necessity requires an objection by the defendant, which never happened. Slow down and speak slower. Well, if manifest necessity requires an objection by the defendant, then all the case law about consent is nonsense. Well, it's a different – it's just a different doctrine. Talk to me so I can hear you. Sorry, Your Honor. Either the defendant consents, either express or implied, or he objects, in which case the justification has to be manifest necessity supported the dismissal. But there's all sorts of case law about implied – about how if there's – if consent is implied, it has to be at least extremely well manifested. And in your theory, that would never come up, because if the – if there isn't an objection, you simply don't have a double Jeopardy problem? Is there any case supporting that? Yes. United States v. Richardson actually cites United States v. Perez. Obviously, Perez is the seminal case that says that in a mistrial, Jeopardy is not terminated. Jeopardy attached, but it didn't end because there was a mistrial, so it's continuing and the defendant can be retried in the circumstance of a mistrial. It depends on what caused the mistrial. This is true, Your Honor. Sure, if there's a mistrial, depending on what happened, you can go ahead and proceed and retry them. It's true. Oh, I mean, I remember a case where it was in our court. Maybe I'm wrong about this, but I'll have to – I'll see if I can find it, where you had a judge in the middle of a trial just get frustrated and whatever it was and just declared a mistrial. I think that was Guy Tan. What? I think that was Guy Tan, G-A-Y-T-A-N. Was that the case you're referring to? No, I don't know. In a burst of anger, the court just declared a mistrial. I've read a lot of cases. It could be that one. And that came up to us, and we held a jeopardy at setting, and the judge had declared a mistrial, and there was no reason for it. And that was the end of the case. I think I know what case you're referring to, Your Honor. I believe it was Guy Tan. And in that situation, it was an implied consent case. And the reason that you said that jeopardy did attack – You know something? The acoustics in this room are terrible.  And that is – I don't – is that a microphone? Or are we just recording with that? What? Recording. Just recording. This is how it does its record. So you get in front of a microphone. Would you like me to speak up and not into the microphone? Yeah, just speak up. Yeah. I think the case to which the court is referring is a case called Guy Tan, in which it was an implied consent case. And the reason that you said jeopardy attached was because the defendant didn't have an opportunity to object. The judge, in a burst of anger, declared a mistrial, which is far and away from the facts of this case, where not only did the court announce what he was going to do, he gave them an opportunity to say something about it. And that brought them to the sidebar. I've got it over here. That was an implied consent case. Can you tell me where in Richardson you're finding this objection rule? Certainly, Your Honor. I might have just a moment. The page 385, 468 U.S., page 325 in Richardson, the court there recognized that the protection of the double jeopardy clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy. It even goes on to cite U.S. v. Perez to recognize that this would happen not only in the circumstances of a mistrial. Well, obviously there has to be something that terminates the original jeopardy. But in this case there was a declaration of a mistrial. So the question isn't whether there has to be one. It's a question of whether that is one. I guess. You posited a rule that makes no sense to me, and I'm asking where you got it from, which is that you can't, even if there's a declaration of a mistrial without manifest necessity, a mistrial is not a termination of jeopardy unless there's an objection. That's what you said. I want to know where you're getting that from. Arizona v. Washington, Your Honor. Arizona v. Washington. Okay. I don't have that. And I'd have to find it, but it doesn't. It makes very little sense to me, because at that point it seems to me that the consent jurisprudence goes out the window. Well, they're two separate. I mean. They're not separate. What's separate about them? This case demonstrates what are not separate. You're saying that even if he didn't consent, if he didn't object, there can't be a, and there's no manifest necessity, he still loses. That's your position. My position is that the Double Jeopardy Clause is not a windfall. No, I'm fine. I understand that. But your position is that even if the judge had just said, as Judge Pragerson said, I don't like this trial anymore. I'm just going to stop it. And your view is that unless the defendant then says, I object, then there's no double jeopardy. Well, it's not what I say. That's what it says in Arizona v. Washington. It says that manifest necessity. Give me the quote. You got it? I can. Excuse me real quick. What's the site to that again? I mean, we're not talking about windfalls and double jeopardy. I don't know why you use that, why you use that term. I mean, double jeopardy is a precious part of our Constitution. You just can't try somebody again. You try them, something goes wrong, and jeopardy set in, and somehow the judge declares a mistrial and is not consented to, does it out of frustration, is tired, the parties are driving him crazy, the DA is going on and on and on, and so that's it. In this case, at least the trial wasn't going on and on and on. You can't try the guy again, period. Your Honor, I agree that double jeopardy is a precious thing. I just don't think that every single time life happens during the course of a trial. When you're a judge, you have to be careful about those things. What things? You have to be careful about them. Double jeopardy. Yeah. And all the constitutional rights. So what? You got to be right on top of them. So what quote that Arizona, Washington? Your Honor, unfortunately, I can't find it in my notes. It's not cited in the district court opinion either, by the way. No, it isn't, but it is. It might be in my brief. So your ultimate position is not that there was consent here, but that there was a failure to object, and therefore, is that your position? My position is that we are not in the realm of manifest necessity because the defendant failed to object. We are in the realm of consent because although there was no express consent, I believe that there was implied consent. Alternatively, one form of manifest necessity that doesn't require an objection is the one that was cited in United States v. Richardson, where the trial courts or the United States Supreme Court said that the protection of the double jeopardy clause by its terms applies only if there has been some event such as an acquittal which terminates the original jeopardy, and that this isn't just for cases pertaining to mistrial. It recognized that the application of double jeopardy principles exists for reasons other than the inability of a jury to agree, and so there must be a situation where, as you're pointing out, Your Honor, if the court is about to declare a mistrial, there are only so many things that can happen. Either the defendant objects, either he agrees, or maybe he sits there and does nothing. So then it's up to the courts to look at what was going on to determine, well, was it okay what happened? Are we going to say that this is a double jeopardy claim or not? Is the defendant protected? And I agree that the double jeopardy claim is a — double jeopardy is a precious aspect of our constitutional jurisprudence. However, it doesn't mean that every time — Kagan. Let me just go to a procedural issue. You're way, way, way, way over your time. All right. Let's say we thought that there was at least a tolerable claim here. What do we do next? I suppose you remand it to the district court for a hearing on the merits. And at that point — It was tolerable. And suppose the district court — first of all, the district court isn't going to know anything that we don't know. So what's the point of that? Well, it's just that there's never been a merits briefing. So what's the point? In Richardson, didn't the Supreme Court go directly to the merits effort to decide it was tolerable? It did. I don't recall, Your Honor. It did. And then it said, all right, now it's not tolerable anymore, so if anybody else does something like this, it's not going to be tolerable. You're correct. But I — But, counsel, it's not just that there hasn't been briefing on this. It's that there isn't — there's an undeveloped record here. I don't know if there was a 20-minute delay. I just asked you that question, and that makes a big difference. I can't tell whether it was audible or not. The defense counsel's response, explanation for why he didn't say anything when the judge said, we all agreed we wouldn't go for it without an alternate, was that he couldn't hear the judge. That causes me to question, you know, how is that possible? There are other questions I've just asked you about whether these jurors were subject to recall, had an objection been raised, because they were sent just two floors away, they were in the jury assembly room. I don't want to repeat myself. But it seems it's not just a lack of briefing. It seems like there's really a need to develop a record here. So I want to be really clear about your position. What relief are you seeking? Well, the relief that I would immediately be seeking is for additional briefing, if I can provide additional information to this Court, before, obviously, you would consider remanding it back to the district court. Because I'm happy to answer those questions and augment the record with that information if I can, Your Honor. However, the point that I was going to make is that if you affirm the lower court's decision, I don't believe that prejudice, that the defendant would be precluded from filing a 2254 petition once his direct appeal is terminated in the State court. He just filed a notice of appeal. His appellate rights in the State court are still pending. That's why I still think that younger abstention applies. However, the conclusion of that, nothing would preclude him from then filing a 2254 habeas, and I do think it's significant. But at that point, AEDPA would require that any Federal court reviewing the record at that point would have to give deference to the State court's finding, which is not true of the case at this juncture. Why would the State go ahead and try him when the Federal matter is on appeal? Because the State court litigated the State double jeopardy claims all the way up to the Supreme Court and issued a 43-page opinion declaring that they did not believe that there was a double jeopardy problem. And then when the jury trial was going to begin, the defense didn't ask for a stay in the trial court. I thought he did ask for a stay here. I didn't get one. You asked for a stay here. Right. And you denied it, but you said that he you gave him leave to ask for in the trial court, which you never did. Well, we do have that issue of whether there was implied consent and whether there was manifest necessity. And let's say it goes back to the district court, and the district court concludes that there was no manifest necessity, nor was there implied consent. Then where are we? That's the problem. I don't know where we are at that point because he's been tried, which is why I think the only remedy is really to ---- That would certainly undermine the validity of the second conviction or of the conviction in the second trial. Because as you read, you understand that where you have a colorable claim, younger abstention doesn't bar that claim. And so if it goes ---- if the district court determines no manifest destiny and no implied consent, it seems to me that that would undermine the conviction. Except that the remedy would be to release a prisoner who's no longer being held. You have to speak a little louder. I'm sorry. Except that the remedy would be to release a prisoner under a 2241 petition, which that status doesn't exist any longer because he's now convicted. Well, what did you just say? I just said that the only remedy, Your Honor, is kind of moot. It doesn't really exist anymore because the defendant is now a convicted prisoner. Well, you know, he did. After the judge declared a mistrial, all he was concerned about was getting his expert witness to testify. And the State agreed, well, we'll accommodate that. We can take the expert out of order. You remember that part? I do, Your Honor. Yeah. I do. And then the judge talked about it was agreed. But, you know, maybe there was implied consent. There was just so much confusion in what was going on at that time. It's really hard to tell. I don't think the judge was thinking about double jeopardy. I don't think the prosecutor was. And maybe the defense attorney was asleep. I don't think the defense attorney was asleep. You don't think so? No. Well, most of the time, half the courtroom is asleep during these hearings. I'll say this defense attorney is a very vigorous advocate. I don't know. We have a legal question. All right. Judge Kristen, anything further? Nothing further. Thank you, Counsel. Thank you, Your Honor. And I would also, as a side note, just like to thank this Court very much for accommodating this oral argument at this time, and also to defense counsel. I'm very appreciative for that. Thank you very much. Yeah. We're just doing our job. Unless the Court has further questions, we may ask them now. All right. Thank you. Thank you. Thank you.
judges: Pregerson, Berzon, Christen